IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CRAIG LATWAIN CHESTNUT, #333070, | Civil Action No. 3:11-1227-RMG-JRM |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| ANGELINA BROWN, DISCIPLINARY HEARING OFFICER; INDIVIDUALLY AND HER OFFICIAL CAPACITIES, | |
| Defendant. | |

Plaintiff, Craig Latwain Chestnut, filed this action pro se on May 26, 2011.[1] Plaintiff appears to have brought this action pursuant to 42 U.S.C. § 1983 ("§ 1983"). He is incarcerated as a youthful offender at the Turbeville Correctional Institution ("TCI") of the South Carolina Department of Corrections ("SCDC"). Defendant is Angelina Brown, a disciplinary hearing officer ("DHO") for SCDC. On September 28, 2011, Defendant filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on September 29, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on October 7, 2011.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2) DSC. Because these are dispositive motions, the report and recommendation is entered for review by the court.

## MOTIONS FOR A TEMPORARY RESTRAINING ORDER

On September 22, 2011, Plaintiff filed a motion for a temporary restraining order ("TRO"). On October 7, 2011, Plaintiff filed another motion for a TRO and preliminary injunction. He claims he is likely to suffer "more mental deficiency" if the motion is not granted, but presents nothing to support his assertion. Plaintiff requests that the Court restrict Defendant's ability to hear cases involving Plaintiff because Defendant is seeking revenge, she continually violates his constitutional rights, she placed Plaintiff in disciplinary detention, and she is prejudiced. Defendant argues that Plaintiff is not entitled to relief because he has presented no evidence that he is likely to succeed on the merits at trial, and he has not shown he is likely to suffer irreparable harm in the absence of preliminary relief, the balance tips in his favor, or an injunction is in the public interest.

The undersigned construes Plaintiff's motions as motions for a preliminary injunction. As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Plaintiff fails to show that he is entitled to relief under the factors set out in Winter. He is unlikely to be successful in the underlying dispute (as discussed in the "MOTION FOR SUMMARY JUDGMENT" section) below. Plaintiff also fails to show that he will suffer irreparable injury if he is not granted a preliminary injunction. He has not alleged that he currently has any pending disciplinary hearings before Defendant. Additionally, he has not shown that the balance of equities

tips in his favor or that an injunction is in the public interest. Thus, it is recommended that Plaintiff's motions for TROs or preliminary injunctions be denied.

**MOTION FOR SUMMARY JUDGMENT**

Plaintiff alleges that he was denied due process as to a disciplinary hearing on December 2, 2010, in which he was convicted of the charge of striking an SCDC employee. He claims that the disciplinary officer (Defendant) was biased, and he was not allowed to have a witness present testimony on his behalf. Plaintiff also appears to allege that he was not given assistance in preparing for trial. He claims that Defendant was aware of a lawsuit against her by Plaintiff, she stated before the hearing that she would find Plaintiff guilty, and she stated she felt as though Plaintiff should have to max out the remainder of his sentence in lock up. Plaintiff claims that his Fourteenth Amendment Due Process rights were violated.[2] He requests monetary damages.

---

[2]It is unclear whether Plaintiff is also attempting to assert a retaliation claim. To establish a First Amendment § 1983 retaliation claim, a plaintiff must show that: (1) the plaintiff's right to speak was protected; (2) the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal relationship existed between the plaintiff's speech and the defendant's retaliatory action. Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685–86 (4th Cir. 2000). For purposes of summary judgment, the undersigned assumes that Plaintiff's filing of two previous lawsuits against Defendant Brown (Civil Action Nos. 3:10-1559-TLW and 3:10-cv-1784- RMG) was protected under the First Amendment. The Court may take judicial notice of Plaintiff's prior lawsuits filed in this Court. See Aloe Creme Labs., Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)(noting that the District Court clearly had the right to take notice of its own files and records and it had no duty to grind the same corn a second time); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989)("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").
   Plaintiff, who continued to prosecute pending actions and filed additional lawsuits after he was convicted on the disciplinary charge on December 12, 2010, has not shown that the alleged retaliatory action adversely affected his constitutionally protected speech. See ACLU v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993)(in a retaliation action alleging First Amendment violations, a plaintiff must show that the conduct complained of adversely affected his constitutional rights).
   Plaintiff has also not shown a causal connection between his lawsuits and his disciplinary
(continued...)

Defendant provides that Plaintiff was charged with striking an SCDC employee as to an incident which occurred on November 14, 2010. Officer Bethea requested that Plaintiff give Bethea Plaintiff's food tray, Plaintiff refused, Bethea moved to close the food flap on Plaintiff's cell in the Special Management Unit, and Plaintiff struck Bethea's arm through the flap and pushed Bethea. See Attachments to Defendant's Motion for Summary Judgment, Disciplinary Report and Hearing Record and Incident Report (Docs. 24-2 and 24-3). Defendant asserts that the hearing record indicates that Plaintiff was provided advance notice of the hearing, he was afforded counsel substitute, no evidence or witnesses were excluded, and he received the loss of several privileges and disciplinary detention as a result of his disciplinary conviction. Additionally, Defendant argues that Plaintiff's grievances and appeal of his disciplinary charge reveals he never claimed he was innocent of the charges and he did not claim that he was denied the right to call witnesses. See Attachments to Defendant's Motion for Summary Judgment, Grievances and Administrative Law Court Action (Docs. 24-4, 24-5, and 24-6). Defendant contends that she is entitled to summary judgment because:

---

[2](...continued)
conviction. Bare assertions of retaliation do not establish a claim of constitutional dimension. Adams, 40 F.3d at 74–75. Here, Plaintiff merely asserts that because he was found guilty of the disciplinary charge it must be because Defendant was biased. He has not asserted that he was innocent of the disciplinary charge. Defendant provided a copy of Plaintiff's Disciplinary Report and Hearing Record from the disciplinary conviction in dispute, as well as the Incident Report concerning the underlying incident. The Disciplinary Report and Hearing Record provides that Plaintiff was found guilty based on the offense report as written. The Incident Report contains a statement from correctional officer Bethea in which he states that Plaintiff refused several directives for Plaintiff to give Bethea Plaintiff's food tray, Bethea attempted to close the food flap, Plaintiff told Bethea to give Plaintiff his snack bag or get Chuala (presumably another correctional officer), Bethea attempted to close the food flap, and Plaintiff put his arm in the food flap and pushed Bethea. Thus, Defendant appears to have presented evidence indicating that she would have taken the same action in the absence of the filing of the earlier lawsuits against her. See Jackson v. Madery, 158 F. App'x 656, 661 (6th Cir. 2005) ("If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." (quoting Thaddeus–X v. Blatter, 175 F.3d 378, 399 (6th Cir.1999))).

(1) the alleged actions/inactions claimed by Plaintiff do not rise to the level of a constitutional violation and Plaintiff did not suffer any infringement of his constitutional and/or federal rights, privileges, or immunities; (2) Defendant is entitled to qualified immunity; (3) Defendant is entitled to Eleventh Amendment immunity; (4) Defendant is entitled to immunity under the South Carolina Tort Claims Act; and (5) Defendant is entitled to summary judgment as to any claims construed as state law claims.

1. Disciplinary Charges

Defendant contends that Plaintiff's claims concerning his disciplinary conviction are barred because Plaintiff has presented no evidence that his conviction has been overturned.[3] She also argues that Plaintiff suffered no loss of good-time credit and received all the process he was due.

Plaintiff fails to show that his due process rights were violated as to his disciplinary hearing because he has not shown that he suffered the loss of good-time credits.[4] See Wolff v. McDonnell,

---

[3] A § 1983 claim for declaratory relief or monetary damages concerning a prison disciplinary hearing which has not been previously invalidated is barred under Heck v. Humphrey, 512 U.S. 477 (1994), where the challenge would necessarily imply the invalidity of the deprivation of good-time credits. Edwards v. Balisok, 520 U.S. 641, 644-646 (1997).

[4] Where a prison disciplinary hearing may result in the loss of good-time credit, Wolff holds that due process requires the following:
1. Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;
2. Providing the prisoner a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action;
3. Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;
4. Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate

(continued...)

418 U.S. 539 (1974). Here, Plaintiff suffered only the loss of privileges and placement in disciplinary detention. See Plaintiff's Disciplinary Report and Hearing Record (Doc. 24-2). The due process procedures required by Wolff and its progeny are not required unless the challenged discipline "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483 (1995)(rejecting inmate's claim that either the Constitution or Hawaii statutes required due process for placement in disciplinary segregation).

Plaintiff fails to show a constitutional violation concerning his custody placement in disciplinary detention. Generally, prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468 (1983)(no constitutional right under the Due Process Clause to a particular security classification or prison placement). An inmate does not have a constitutional right to be confined in a particular location. See Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976). In Sandin, the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. at 483. The Supreme Court concluded that the plaintiff's "segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. at 485. Under the

---

[4](...continued)
  comprehension of the case; and
5. Providing impartial fact finders.
Wolff, 418 U.S. at 563-576.

analysis set forth in Sandin, Plaintiff cannot show that he has a protected liberty interest in his security or custody classification. Id. at 483-85; see Backey v. South Carolina Dep't. of Corrs., 73 F.3d 356, 1996 WL 1737 (4th Cir. Jan. 3, 1996)[Table](allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke due process rights); Joseph v. Gillespie, 73 F.3d 357, 1995 WL 756280 (4th Cir. December 21, 1995)[Table]("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure."); Reffritt v. Nixon, 917 F. Supp. 409, 412 (E.D.Va. 1996)(plaintiff has no protected interest in remaining in or being released into general population), aff'd, 121 F.3d 699 (4th Cir. 1997).

Plaintiff fails to show a constitutional violation as to his loss of privileges. He has not shown that he has a protected liberty interest in making phone calls. See U.S. v. Alkire, No. 95-7885, 1996 WL 166400, at *1 (4th Cir. Apr.10, 1996)(no constitutional right to the use of a telephone in prison); Hadley v. Peters, 70 F.3d 117 (7th Cir. 1995)[Table]("The denial of telephone privileges for ten days is not a matter of constitutional dimension."), cert. denied, 517 U.S. 1111 (1996); May v. Baldwin, 895 F. Supp. 1398, 1409 (D.Ore. 1995)(brief suspension of television and telephone privilege does not amount to constitutional violation), aff'd, 109 F.3d 557 (9th Cir. 1997), cert. denied, 522 U.S. 921 (1997). Prisoners do not have an affirmative constitutional right to visitation. White v. Keller, 438 F.Supp. 110, 115 (D.Md.1977) (but leaving open the possibility that a permanent ban on all visitation could implicate the Eighth Amendment), aff'd, 588 F.2d 913 (4th Cir.1978); see also Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 461, (1989) (finding no right to visitation guaranteed by the Due Process Clause). Canteen access is also not a protected liberty interest. See

7

e.g. Madison v. Parker, 104 F.3d 765, 768 (5th Cir.1997) (holding that commissary restrictions did not entitle inmate to due process protections during disciplinary proceeding); Bennett v. Cannon, C/A No. 2:05-2634-GR, 2006 WL 2345983, at *2 (D.S.C. Aug.10, 2006) ("[t]here is simply no freestanding constitutional right to canteen privileges at all").

   2. Immunity

Defendant asserts that she is entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against

the state. State officials may only be sued in their individual capacities. Thus, Defendant is entitled to Eleventh Amendment immunity from damages in her official capacity.

Defendant also contends that she is entitled to qualified immunity in her individual capacity. The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Id.</u> at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), <u>cert. denied</u>, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendant violated any of his clearly established constitutional or statutory rights. Therefore, Defendant is entitled to qualified immunity in her individual capacity.

3. <u>State Law Claims</u>

Defendant contends that any state claim claims are barred pursuant to the South Carolina Tort Claims Act, Defendant should be granted summary judgment as to any state law claims

based on the grounds set forth, or in the alternative the Court should not exercise pendant jurisdiction over any such claims. As Plaintiff fails to show that Defendant violated his rights under § 1983 (as discussed above), it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed.

## **CONCLUSION**

Based on review of the record, it is recommended that Plaintiff's motions for preliminary injunctions (Docs. 23 and 32) be denied; and that Defendant's motion for summary judgment (Doc. 24) be granted.

                                                            Joseph R. McCrorey
                                                            United States Magistrate Judge

June 19, 2012
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).